IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BELINDA WASHINGTON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:24-cv-02542-PX |
| HAIR CUTTERY FAMILY OF BRANDS a/k/a HC SALON HOLDINGS, INC. | * | |
| | * | |
| Defendant. | | |
| | *** | |

**MEMORANDUM OPINION**

Pending in this employment discrimination case is Defendant Hair Cuttery Family of Brands, a/k/a HC Salon Holdings, Inc., ("Hair Cuttery")'s partial motion to dismiss Plaintiff Belinda Washington ("Washington")'s Complaint. ECF No. 9. The issues have been fully briefed, and the Court finds no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, Defendant's motion is granted in part and denied in part.

I.  **Background**

Since 2017, Washington, a hairdresser with 30 years' experience, worked at Hair Cuttery in Waldorf, Maryland. ECF No. 1 ¶¶ 11–12. Washington was 57-years old when Jennifer Jackson ("Jackson"), a considerably younger and less experienced stylist, began working at the salon. *Id*. ¶ 13. Even though Jackson was only in her early twenties, she was quickly promoted to assistant manager. *Id.* Tea Daley ("Daley"), also in her early twenties, was the store manager and served as Washington's second level supervisor. *Id.* ¶ 14. Brice Brusaw ("Brusaw"), also considerably younger than Washington, was the District Manager with ultimate hiring and firing authority over Washington. *Id.* ¶ 15.

Since Jackson was hired, she had regularly lobbed age-related insults at Washington. *Id.* ¶ 18. Jackson routinely called Washington "old" and an "old cow." *Id.* Daley, too, referred to Washington and others as "senior citizens." *Id.* Washington had complained about Jackson's behavior and was told simply to "ignore [her]." *Id.* Washington also went to the Human Resources department about Daley routinely propping open the back door of the salon despite the attendant security risks, and because she denied other employees' medical leave requests. ECF No. 1 ¶ 20. *See also id.* ¶ 21 (notifying Human Resources Vice President, Gustavo Serbia, about Daley and her partner having smoked marijuana in the salon).

Sometime in July 2023, Washington caught COVID-19. *Id.* ¶ 22. Daley demanded proof of Washington's illness and that she had visited the doctor. *Id.* On August 20, 2023, Washington went to the emergency room and was diagnosed with post-COVID fatigue. *Id.* ¶ 23. But because she did not have COVID, Washington reported to work on time the next day. *Id.* ¶ 24.

Daley, however, overheard Washington discussing her emergency room visit and immediately demanded that Washington produce a doctor's note confirming that she no longer had COVID. *Id.* ¶ 24. Because Washington did not have any COVID symptoms nor was she actively ill, Washington refused. *Id.* ¶ 25. Daley, in turn, told Washington that if she did not produce the doctor's note, she would receive a disciplinary "point" and would be sent home for the day. *Id.* Washington responded that she would report Daley to Human Resources, to which Daley replied, "I am tired of old farts like you calling HR on me." *Id.* ¶ 26. On August 28, 2023, Daley issued Washington a formal reprimand, nine disciplinary points, and sent her home. *Id.* ¶¶ 26–27.

Washington appealed the reprimand to Brusaw on September 8. *Id.* ¶ 28. Brusaw promised Washington he would speak to Daley. *Id.* Later that day, Daley and Jackson warned Washington that she "had a target on her back." *Id.* ¶ 29.

Later that month, Washington planned to take a short vacation with her family beginning September 30. *Id.* ¶ 30. On September 25, her leave request was denied. *Id.* Daley told Washington that if she took the vacation, it would cause "complications." *Id.* Washington, frustrated and exhausted, mumbled to herself that she occasionally wished she could "quit." *Id.* Daley, having overheard the comment, shot back, "[o]h, you want to quit? Then let's make it happen, grandma." *Id.* Two days later, Washington was fired. *Id.* ¶ 32.

## II.     Procedural Posture

In March of 2024, Washington filed a formal charge (the "EEO Charge") with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 10; ECF No. 9-2 at 2. In it, Washington alleged that Hair Cuttery had committed "age discrimination" and "retaliation" against her. She also described that she had reported her supervisor's "disrespect, marijuana use and [their] failure to get along," and that the discipline she received, including termination, were "due to [her age]." *Id.* Although Washington cited Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, which prohibits race-based discrimination and retaliation, nothing in the charge suggests that Washington's claims were race-based. *Id.*

On June 4, 2024, the EEOC issued Washington a right-to-sue notice. ECF No. 1 ¶ 10. Washington next filed suit on September 3, 2024, against Hair Cuttery for discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, (Counts I & II) and the state analog, the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, §§ 20-601, *et seq.,* (Counts III & IV). Washington also

alleges violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, (Count V), and the common law tort wrongful discharge in retaliation for complaining about workplace health and safety violations. ECF No. 1. Hair Cuttery now moves to dismiss the retaliation claims (Counts II and IV) for failure to exhaust administrative remedies, ECF No. 9-1 at 6; the FMLA and wrongful discharge claims for insufficiency, *id.* at 8–9; and to strike Washington's request for punitive damages, *id.* at 12. The Court considers each argument separately.

### III.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The Court must be able to deduce "more than the mere possibility of misconduct;" the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, "[t]he court may consider documents attached to the complaint, as well

as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see Cheng v. U.S. Bureau of Lab. Stat.*, CV No. 21-03282-BAH, 2024 WL 1743409, at *5 (D. Md. Apr. 22, 2024) (considering a Final Agency Decision and a Merit Systems Protection Board ("MSPB") Initial Decision when ruling on issues related to administrative exhaustion under Rule 12(b)(6)).

## IV.    Analysis

### A. Retaliation under ADEA and MFEPA (Counts II & IV)

Turning first to the retaliation claims, the Court considers them together. *See Thiele v. Kate Spade LLC*, Civ No. SAG-20-3086, 2021 WL 50919, at *4 (D. Md. Jan. 6, 2021); *see also Marshall v. Anne Arundel Cty., Md.*, Civ. No. ELH-18-74, 2019 WL 568676, at *9–10 (D. Md. Feb. 12, 2019) (ADEA and MFEPA subject to same exhaustion requirements). Hair Cuttery maintains that Washington failed to exhaust administrative remedies because in the EEO Charge, she had cited Title VII instead of the ADEA. ECF No. 9-1 at 7.

Before filing suit in federal court, an employee must first exhaust her claims administratively. *See* 29 U.S.C. § 626(d); Md. Code Ann., State Gov't § 20-1013(a)(1). Although no longer strictly a jurisdictional prerequisite, exhaustion remains a necessary precondition to filing suit. *Cf. Fort Bend Cty., Tex. v. Davis*, 587 U.S. 541, 543, 548–52 (2019). The primary purpose of exhaustion is to provide notice of the alleged violations, "thereby giving [the defendant] a chance to address the alleged discrimination prior to litigation." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593–94 (4th Cir. 2012); *see also Webb v. Potomac Elec. Power Co.*, No. CV TDC-18-3303, 2020 WL 1083402, at *3 (D. Md. Mar. 6, 2020). The formal charge submitted to the EEOC defines the scope of the suit. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)

(citation omitted). If the cause of action is "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance her claims" in this suit. *Id.*; *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 509–10 (4th Cir. 2005).

Although hardly a model of clarity, the EEO Charge is sufficient to preserve Washington's age-based retaliation claim. Washington, no doubt, referenced Title VII in error as related to her retaliation claims. ECF No. 9-2 at 2. But when read in context, the claim alleges retaliation after she complained about discrimination on account of her age. The EEO Charge describes that Washington had been written up and eventually discharged on September 25, 2023, and next that she had been "disciplined and discharged due to [her] age (59) in violation of the Age Discrimination in Employment Act of 1967 *and in retaliation for complaining. . . .*" *Id.* (emphasis added). In the pre-printed box titled "DISCRIMINATION BASED ON," Washington also typed "Age, Retaliation." *Id.* Nowhere does the Charge otherwise refer to any race-related discrimination or retaliatory acts. When read as a whole, the EEO Charge adequately alerted Hair Cuttery and the EEOC that Washington intended to pursue an age-based, not race-based, retaliation claim. Thus, the retaliation claims are sufficiently related to the EEO Charge such that the claim is exhausted. Dismissal is denied.

### B. FMLA Violation (Count V)

Hair Cuttery next contends that Washington's FMLA claim fails because no facts make plausible that Hair Cuttery "interfered" with Washington's FMLA leave. ECF No. 9-1 at 8–9. A private employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" leave rights covered under the FMLA. 29 U.S.C. § 2615. For an FMLA interference claim, the Complaint must plausibly aver that "(1) [the plaintiff] is entitled to an FMLA benefit; (2) [her] employer interfered with the provision of that benefit; and (3) [] the interference caused

harm." *Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 796 (4th Cir. 2023) (citing *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015) (abrogated on other grounds by *Hansley v. DeJoy*, No. 23-1426, 2024 WL 4947275 (4th Cir. Dec. 3, 2024))). However, an employer's mere request for medical verification in connection with FMLA leave alone will not constitute "interference" under the Act. *See* 29 C.F.R. § 825.305(a); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 383 (4th Cir. 2001); 29 U.S.C. § 2613(a).

When viewing the Complaint most favorably to Washington, no facts support the claim. Washington asked for FMLA leave once, in July 2023, when she fell ill with COVID-19, and Hair Cuttery *granted* the request. ECF No. 1 ¶ 79. Certainly, approving leave cannot sustain the interference claim. Nor can Daley's request for proof that Washington had sought medical treatment while on leave sustain the allegation because the FMLA permits employers to make such requests. *Id.* ¶ 81. The Complaint otherwise alleges non-specific "denials" of time off, untethered to whether Washington sought leave under the FMLA or for some other unrelated reason. *Id.* ¶ 80. Because no facts make plausible that Hair Cuttery interfered with Washington's exercise of FMLA benefits, the claim fails and must be dismissed.

### C. Wrongful Discharge (Count VI)

Next, as to the wrongful discharge claim, Hair Cuttery principally contends that Washington has failed to make plausible that her termination violated a clear mandate of public policy. ECF No. 9-1 at 11. The Court agrees. In Maryland, an at-will employee may be terminated for any reason except when the discharge "contravenes some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 291 Md. 31, 47 (1981); *see also Porterfield v. Mascari II, Inc.*, 374 Md. 402, 422–23 (2003). A claim of "wrongful discharge" is a "narrow exception to this well-established principle" of at-will employment. *Sears, Roebuck & Co. v. Wholey*, 139 Md. App.

642, 649 (2001).  The purpose of the tort is "to provide a remedy for an otherwise unremedied violation of public policy."  *Wholey v. Sears Roebuck*, 370 Md. 38, 52 (2002). Where the Legislature defines the remedy for the "policy violation," any common law tort premised on the same violation would improperly expand that which was articulated as available through the Legislature. *Id.*  Thus, where the employee has other civil remedies available, the employee cannot proceed on the wrongful discharge claim.  *Id.* (collecting cases).

Reading the Complaint most favorably to Washington, she alleges that she had been retaliated against because she complained about general health and safety violations in her workplace, and this retaliation violated the "clear mandate of public policy" articulated in the Maryland Occupational Safety and Health Act ("MOSHA"), Md. Code Ann., Lab. & Empl. §§ 5-101–5-1103.  ECF No. 1 ¶¶ 84 & 85.  Putting to the side how a generalized reference to an entire statutory scheme aimed at protecting all manner of workplace conditions would ever be a sufficiently clear articulation of the public policy mandate, c*f. Parks v. Alpharma, Inc.*, 421 Md. 59, 84–85 (2011), the claim fails for a more fundamental reason.

Washington alleges that she had been wrongfully terminated in retaliation for reporting health and safety violations.  ECF No. 1 ¶ 85 ("the ongoing retaliation and harassment Plaintiff was subjected to after making her various complaints" constitutes the violation).  But Washington already has an avenue for relief under MOSHA.  The statute provides that "an employee who believes that an employer . . . has discharged or otherwise discriminated against the employee in violation of [MOSHA] may submit to the Commissioner [of Labor and Industry][1] a written complaint that alleges the discrimination . . . ."  Md. Code Ann., Lab. & Empl. §5-604(c).  If the Commissioner, after investigation, determines that a violation occurred, the Commissioner may

---

[1] The Commissioner is responsible for administering and enforcing MOSHA.  Md. Code Ann., Lab. & Empl. § 5-201.

8

enjoin the employer from committing further violations, order the employee's reinstatement with back pay, or seek "other appropriate relief in the circuit court." *Id.* § 5-604(d)(2). Indeed, because MOSHA accords protection for the employee from unlawful retaliation, the employee cannot also maintain a common law wrongful discharge claim. *See Silkworth v. Ryder Truck Rental, Inc.*, 70 Md. App. 264, 270 (1987) (holding employee cannot base wrongful discharge claim on violations of MOSHA); *Meadows v. Container Rsch. Corp.*, No. Y-82-3353, 1983 WL 30659, at *2 (D. Md. Apr. 27, 1983) (rejecting wrongful discharge claim based on MOSHA violation because MOSHA provides an exclusive remedy). Thus, the claim must be dismissed on this ground alone.

### D. Motion to Strike Punitive Damages

Hair Cuttery lastly asks the Court to strike the punitive damages request. ECF No. 9-1 at 12. Although Hair Cuttery rightly contends that punitive damages are not available under the ADEA, *see Walker v. Pettit Const. Co., Inc.*, 605 F.2d 128, 130 (4th Cir. 1979); *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 967 n.11 (4th Cir. 1985), MFEPA is a different matter. Where an MFEPA violation is committed with "actual malice," punitive damages may lie, subject to the statutory caps. *Doe v. Montgomery Cty. Bd. Of Educ.*, No. CV GLR-24-2884, 2025 WL 1548580, at *7 (D. Md. May 30, 2025) (quoting Md. Code Ann., State Gov't § 20-1013(e)(1)).[2] Actual malice is defined as "'evil motive, intent to injure, ill will, or fraud.'" *Cavey v. Mach Trucking LLC*, No. GLR-16-1339, 2016 WL 5462791, at *2 (D. Md. Sept. 29, 2016) (quoting *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 460 (1992)).

The Complaint allegations sufficiently preserve the claim for punitive damages. Daley and Jackson had engaged in a months-long campaign of demeaning and belittling Washington on account of her age even after she had complained to management. ECF No. 1 ¶¶ 18

---

[2] The limitation on punitive damage awards is set forth in Md. Code Ann., State Gov't §§ 20-1013(e)(1) & 20-1009(b)(3).

("continuously" calling Washington an "old cow" and "mocking [Washington] about her age"); *id.* ¶ 26 (Daley telling Washington "I am tired of old farts like you calling HR on me."); *id.* ¶ 30 ("[Y]ou want to quit? Then let's make it happen, grandma."). At the same time, Daley reprimanded Washington without cause, *id.* ¶ 26-27; told Washington she "had a target on her back," *id.* ¶29; and denied leave requests without justification. *Id.* ¶ 30. It is at least plausible that a factfinder could conclude the wrongdoers had discriminated against Washington with sufficient "intent to injure," or "ill will." *Owens-Illinois, Inc.*, 325 Md. at 460. Thus, the Court denies Hair Cuttery's motion to strike.

## V. Conclusion

For the reasons previously discussed, the Court grants Defendant's motion to dismiss the FMLA and wrongful discharge claims (Counts V and VI), denies dismissal of the retaliation claims (Counts II and IV), and denies the motion to strike the prayer for punitive damages for the MFEPA discrimination claim. Because Washington asks for the opportunity to amend the Complaint to cure identified pleading defects, ECF No. 14-1 at 12, and she has not yet amended the pleading, the Court will grant dismissal without prejudice. *King v. Rubenstein*, 825 F.3d 206, 225 (4th Cir. 2016); *see also Ostrzenski v. Siegel*, 177 F.3d 245, 252–53 (4th Cir. 1999) (noting that plaintiffs should be given leave to amend a complaint in the event of dismissal under Rule 12(b)(6) before claims are dismissed with prejudice). Within **14 days of this Opinion and Order**, Washington may move for leave to file an amended complaint to address the identified pleading defects in Counts V and VI only. Failure to move for such leave will result in dismissal of Counts V and VI with prejudice.

A separate Order follows.

Date: July 24, 2025                                                                 /S/
                                                                                        Paula Xinis
                                                                                        United States District Judge